UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-305 (JEB) |
| | : | |
| SARA CARPENTER, | : | |
| | : | |
| Defendant. | : | |

MOTION IN *LIMINE* TO PRECLUDE
CERTAIN DEFENSE ARGUMENT ENTRAPMENT BY ESTOPPEL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following motions in *limine* to preclude the following defense arguments and admission of evidence during trial in this case.

1. **This Court Should Preclude the Defendant from Arguing Entrapment by Estoppel, i.e., that Former President Trump Gave Permission to Attack the United States Capitol**

The government moves in *limine* to prohibit the Defendant from making arguments or attempting to introduce non-relevant evidence that former President Trump gave permission for the defendant to attack the U.S. Capitol.

"To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (Howell, C.J.) (quoting *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018).

In *Chestman*, Chief Judge Howell rejected an entrapment by estoppel argument raised by a January 6 defendant charged, like defendant here, with, *inter alia,* violations of 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 1512(c)(2). That reasoning would apply fully to a similar defense presented by defendant:

> January 6 defendants asserting the entrapment by estoppel defense could not argue that they were at all uncertain as to whether their conduct ran afoul of the criminal law, given the obvious police barricades, police lines, and police orders restricting entry at the Capitol. Rather, they would contend … that the former President gave them permission and privilege to the assembled mob on January 6 to violate the law.
>
> * * * *
>
> Setting aside the question of whether such a belief was reasonable or rational, [precedent] unambiguously forecloses the availability of the defense in cases where a government actor's statements constitute "a waiver of law" beyond his or her lawful authority…. Just as … no Chief of Police could sanction murder or robbery, notwithstanding this position of authority, no President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters. Accepting that premise, even for the limited purpose of immunizing defendant and others similarly situated from criminal liability, would require this Court to accept that the President may prospectively shield whomever he pleases from prosecution simply by advising them that their conduct is lawful, in dereliction of his constitutional obligation to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. That proposition is beyond the constitutional pale, and thus beyond the lawful powers of the President.
>
> Even more troubling than the implication that the President can waive statutory law is the suggestion that the President can sanction conduct that strikes at the very heart of the Constitution and thus immunize from criminal liability those who seek to destabilize or even topple the constitutional order. In addition to his obligation to faithfully execute the laws of the United States, including the Constitution, the President takes an oath to "preserve, protect and defend the Constitution." U.S. Const. art. II, § 1, cl. 8.

*Chrestman*, 525 F. Supp. 3d 14, 32–33 (some internal punctuation omitted).

Nor can there be any reasonable claim that President Trump intended to or actually authorized the Defendant's particular criminal conduct. The Defendant advanced on the U.S. Capitol from the West Front, where rioters were attacking law enforcement on the lower terrace and the stairs. She entered the Capitol through the Upper West Terrace, which had been guarded

by police officers, after other rioters had overwhelmed these officers who were forced to retreat. She then proceeded into the Capitol, and into the Rotunda, and eventually to the Old Senate Chamber where she verbally accosted police officers defending the Capitol for several minutes and slapped the hand away of an officer who was trying to hold her and other rioters back from penetrating further into the Capitol where trapped lawmakers, who otherwise would have been presiding of the Electoral College Certification, were hiding in secure locations.  The Defendant will be unable to identify any remarks made by former President Trump that authorized that illegal conduct.

The reasoning in *Chrestman* applies equally to an argument that a member of law enforcement gave permission to the Defendant to enter the Capitol building. As reasoned in *Chrestman*, "Cox unambiguously forecloses the availability of the defense in cases where a government actor's statements constitute 'a waiver of law' beyond his or her lawful authority." *Chrestman*, 525 F. Supp. 3d at 32 (*quoting Cox v. Louisiana*, 379 U.S. 559, 569 (1965)). The Defendant was aware of the significant police presence protecting the Capitol and preventing rioters from entering.





Just as "no President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters," no member of law enforcement could use his authority to allow individuals to enter the Capitol building during a violent riot, and after "obvious police barricades, police lines, and police orders restricting entry at the Capitol" had already been put in place by the United States Capitol Police and the Secret Service. *Id*. at 32. Indeed, just recently, a judge of this Court ruled in another January 6, 2021, case that "the logic in *Chrestman* that a U.S. President cannot unilaterally abrogate statutory law applies with equal force to government actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building." Memorandum and Order, *United States v. Williams*, No. 21-cr-377-BAH, at *2 (D.D.C. June 8, 2022).

Even if the Defendant could establish that a member of law enforcement told her that it was lawful to enter the Capitol building or allowed her to do so, the Defendant's reliance on any such statement would not be reasonable in light of the "obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Chrestman*, 525 F. Supp. 3d at 32. Moreover, the Defendant's actions belie any argument that she actually relied on any such statement by law enforcement when she made a decision to unlawfully enter the Capitol building through a door breached by rioters already inside the building.

"[E]ntrapment by estoppel is a defense rather than an evidentiary objection and, accordingly, should have been raised prior to trial." *United States v. Colon Ledee*, 967 F. Supp. 2d 516, 520 (D.P.R. 2013). At the very least, the government requests the Court to inquire before trial if the Defendant intends to either advance a defense of entrapment by estoppel or present any argument or evidence, the purpose of which would be to support such a defense. If the answer is

anything but an unqualified "no," the Court should direct the Defendant to make an offer of proof of such evidence and articulate why the defense is legally tenable notwithstanding Chief Judge Howell's explanation that it could not be. Absent an express ruling by the Court permitting such evidence or argument, the Court should prohibit the Defendant from making arguments or attempting to introduce evidence that former President Trump or any law enforcement officers authorized the defendant's entry into or conduct at the Capitol.

II. **This Court Should Preclude the Defendant from Arguing that Alleged Inaction by Law Enforcement Officers Made Their Conduct on January 6, 2021, Legal**

In addition to prohibiting any defense argument that law enforcement actively communicated to the Defendant that entering the Capitol building or grounds was lawful, the Court should also bar the Defendant from arguing that any failure to act by law enforcement rendered her conduct legal. The same reasoning that applied in *Chrestman* again applies here. That is, like the Chief Executive, a Metropolitan Police Officer or Capitol Police Officer cannot "unilaterally abrogate criminal laws duly enacted by Congress" through his or her purported inaction. *Chrestman*, 525 F. Supp. 3d at 33. An officer cannot shield an individual from liability for an illegal act by failing to enforce the law or ratify unlawful conduct by failing to prevent it. Indeed, another judge of this District expressly reached that conclusion in *Williams* recently. *Williams,* No. 21-cr-377-BAH, at *3 ("Settled caselaw makes clear that law officer inaction— whatever the reason for the inaction—cannot sanction unlawful conduct.").

This Court should apply the same principle in this case. Accordingly, the Defendant should be prohibited from arguing that her conduct was lawful because law enforcement officers allegedly failed to prevent it or censure it when it occurred. Defendant entered the Lower West Terrace doors at approximately 2:44PM. The doors were initially breached, at approximately

2:33pm, from the inside-out by rioters already inside the building. This drew attention to rioters just outside the doors and people began steadily streaming into the Capitol over the next seven minutes. At approximately 2:40PM, USCP officers attempt to regain position of the door. For approximately four minutes, rioters argued with officers, as the crowd outside bottle necked. At approximately 2:44PM officers resign their position after the crowd begins to shove forward and argue more intensely. Defendant appears on CCTV mere seconds before officers are forced to retreat.



### III. This Court Should Preclude the Defendant from Arguing or Presenting Evidence of Alleged Inaction by Law Enforcement Officers Unless the Defendant Specifically Observed or Was Otherwise Aware of Such Conduct

The government acknowledges that the conduct of law enforcement officers may be relevant to the Defendant's state of mind on January 6, 2021. However, unless the Defendant shows that, at the relevant time, she specifically observed or was otherwise aware of some alleged inaction by law enforcement, such evidence is irrelevant to the Defendant's intent.

Federal Rule of Evidence 401 states that evidence is relevant if it "has any tendency to make a fact more or less probable … and the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, if the Defendant was not aware of law enforcement's alleged inaction at the time of her entry onto restricted grounds or into the Capitol building (or at the time she committed the other offenses charged in the Indictment), any alleged inaction would have no bearing on the Defendant's state of mind and therefore would not meet the threshold for relevance.  Again, another judge of this district adopted the same reasoning in granting an analogous motion in *limine*. *See Williams*, No. 21-cr-377-BAH, at *3-4.  The Court should reach the same conclusion in this case and exclude testimony and evidence of any alleged inaction by the police as irrelevant, except to the extent the Defendant shows that she specifically observed or was aware of the alleged inaction by the police when she committed the offenses charged in the Indictment. Even in the event Defendant observed police action or inaction, Defendant should still be precluded from arguing estoppel because any reliance would be so unreasonable in light of the surrounding circumstances: police being overtaken by a mass riot.

## CONCLUSION

Motions in *limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. District of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)). The government presents these issues to the Court in an effort to prepare this case for an efficient trial. For the reasons set forth herein, the United States respectfully requests that this Court grant the government's motion in *limine* as set forth herein.

Respectfully submitted,

Matthew M. Graves
United States Attorney

        D.C. Bar No. 481052

By: /s/ *Rebekah E. Lederer*
    REBEKAH E. LEDERER
    Assistant United States Attorney
    Bar No. PA 320922
    601 D Street, N.W.
    Washington, D.C. 20001
    (202) 252-7012
    Rebekah.Lederer@usdoj.gov

    CHRISTOPHER M. COOK
    Assistant United States Attorney-Detailee
    Bar No. KS 23860
    601 D Street, N.W.
    Washington, D.C. 20001
    (412)327-3487
    Christopher.cook5@usdoj.gov