UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 21-cr-305 (JEB) |
| | ) | |
| SARA CARPENTER, | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

### DEFENSE MOTION IN LIMINE TO PRECLUDE CERTAIN EVIDENCE AT TRIAL

Ms. Carpenter, through counsel, moves the Court to preclude the government from (1) introducing an irrelevant and prejudicial 22-minute compilation video[1] and any other visual evidence depicting the prejudicial actions of January 6th protesters that Ms. Carpenter was not party to, including but not limited to forced entry, assaultive behavior, and theft or destruction of property; (2) using inflammatory language related to the events of January 6th; and (3) introducing or otherwise using any alleged statements of Ms. Carpenter that it has not previously disclosed. Such video evidence of conduct not attributable to Ms. Carpenter is not relevant and thus not admissible under Federal Rules of Evidence 401 and 402. Even if the Court were to deem any of this evidence relevant, it should nonetheless exclude it under Rule 403 because any probative value is outweighed by a significant danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence.

---

[1] Defense counsel will share this video exhibit with the Court.

1

## Background

In mostly every January 6 trial held thus far, the government has been introducing a 22-minute video montage capturing surveillance of thousands of other individuals on the Capitol Grounds and inside the Capitol building on January 6, 2021. The video highlights many of the key breaches that occurred that day, depicting violence and activities that Ms. Carpenter was not involved in. Ms. Carpenter is not featured anywhere in the video montage, and was not present for any of the activities depicted in it.

Instead, this video compilation shows the activities of other individuals connected to the events of January 6, 2021, and is unrelated to Ms. Carpenter's charges. The only evident purpose of admitting it would be to inflame the passions of the jury.

The government has also been introducing inflammatory language that paints all defendants with one broad stroke, such as "rioters and insurrectionists." The government and the media have portrayed the events of January 6 as an attempt to overthrow the government – and an attack on democracy itself.[2] As the

---

[2] *See, e.g.,* Kevin McCoy & Kevin Johnson, *Investigators Signal Some Capitol Riot Suspects Could Be Charged with Conspiring to Overthrow U.S. Government*, USA Today, (Feb. 19, 2021), https://www.usatoday.com/story/news/2021/02/19/capitol-riot-did-conspirators-try-overthrow-u-s-government/6750393002/; *see also The January 6 Attack on the U.S. Capitol*, American Oversight (Jan. 5, 2022), https://www.americanoversight.org/investigation/the-january-6-attack-on-the-u-s-capitol. ("Trump supporters having for weeks discussed openly their plans for a violent overthrow.").

Court is aware, a large portion of D.C. residents either work for the federal government themselves or have friends or family who do. The government has sought to introduce the prejudicial video montage to portray an "attack" on the Capitol. It also seeks to use language to support the narrative that all defendants are "insurrectionists." *See e.g., United States v. Cuoy Griffin*, No. 21-cr-192-TNM, ECF No. 105, Motions hearing transcript. In addition, in several filings, the government has used the terms, "riot," "insurrection," or "attack" and other inflammatory terms to describe the events of January 6th.

Ms. Carpenter has not been charged with assault, seditious conspiracy, or any other crime that would support the notion that she "attacked" the capitol or was an "insurrectionist."

## Legal Standard

Rule 401 mandates that evidence is relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence, and, the fact is of consequence in determining the action." Fed. Rule. Evid. 401. Evidence that is not relevant is not admissible. Fed. Rule. Evid. 402.

Rule 403 prohibits even relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury…" Fed. Rule. Evid. 403. "Unfair prejudice" results when some potentially relevant evidence is designed to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997). It is well established that a court should "weigh the

3

probative value of evidence in light of appropriate evidentiary alternatives." *Id.* at 182-185; *See also Henderson v. George Washington University*, 449 F.3d 127, 137 (D.C.Cir. 2006) ("The prejudice to an opponent can be said to be 'unfair' when the proponent of the evidence could prove the fact of other, non-prejudicial evidence").

"Pretrial consideration of evidentiary issues serves to avoid the futile attempt of 'unring[ing] the bell' when jurors have seen or heard inadmissible evidence, even when stricken from the record." *United States v. De Armas Diaz*, No. 2:13-cr-00148-JAD-GWF, 2014 U.S. Dist. LEXIS 51850, at *1-2 (D. Nev. Apr. 14, 2014).

## Argument

### I. The Government's Montage Exhibit is Not Relevant

The government's anticipated compilation and summary exhibit is 22 minutes in duration and portrays individuals who are not Ms. Carpenter engage in activities that Ms. Carpenter did not. It does not contain any fact of consequence in determining the charges against her and hence does not have any tendency to make such a fact more or less probable than it would be without the evidence. The video montage begins at 12:51 p.m., when Ms. Carpenter was nowhere near the Capitol Building. The video then takes the observer through the main breaches of that day, at various parts of the building that Ms. Carpenter never set foot in in and during times she was not even there. The video ends at 4:30 in the afternoon, long after Ms. Carpenter had left the Capitol building. Ms. Carpenter is nowhere in the video montage, and less than two minutes of it even overlap with the time frame during

which she is alleged to have been in the building.

Under the relevancy test of Rule 401, "there is no such thing as 'highly relevant' evidence or…'marginally relevant' evidence. Evidence is either relevant or it is not." *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993). The initial step in determining relevancy is "to identify the matter properly provable….and discover to what proposition it is supposed to be relevant" *Id.* (citing *Probability and the Law*, 29 CAL. L. REV. 689, 696 n. 15 (1941)). With this guidance, the only proposition the video compilation proves is that thousands of people other than Ms. Carpenter violently broke into the Capitol Building on January 6, 2021 and breached many police lines. However, that fact does not make it more or less probable that Ms. Carpenter herself did those things because she is clearly not committing, or even present during the commission of those acts in the video. Therefore, this video montage is not relevant at Ms. Carpenter's trial and should be excluded under Rule 402.

Last, courts have found this type of "background" information inadmissible when it is not relevant for any other purpose. In *United States v. Evans*, 216 F.3d 80, 87 (D.C. Cir. 2000), the government also tried to offer "background" testimony to give the jury a complete picture of the events. However, the court explained that "no matter how important it is for the government to present a complete, morally compelling narrative, it must present that narrative through admissible evidence…." *Id.* at 86.

## II.  Admission of this Compilation Video Violates Rule 403 in Light of Appropriate Evidentiary Alternatives

The video montage is not only unfairly prejudicial, it would also be sure to mislead and confuse the jury. Ms. Carpenter is charged essentially with obstruction, trespass, and disorderly conduct. Most of the actions portrayed in this video compilation involve assaults against police, destruction of property, and police use of force against those individuals. Many of the images portrayed show tear gas in the air, police being overrun, and windows being broken with flagpoles. Ms. Carpenter isn't charged with or accused of assaulting anyone or destroying anything, and this video's admission would be highly prejudicial given its graphic nature – placing focus on the violence that occurred that day and creating sensory anxiety in jurors. The only purpose this evidence would serve would be to inflame the jury by stirring up their emotions regarding the overall severity of what happened that day.

"Evidence is unfairly prejudicial if it 'makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996) (citations and inner quotations marks omitted).  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different

6

from proof specific to the offense charged." *Old Chief,* 519 U.S. 172 at 180. Undoubtedly, the video montage the government will seek to introduce will invoke an emotional response and lure jurors into declaring Ms. Carpenter's guilt on grounds separate from her actions that day, regardless of any arguments she makes. Once the jury observes this inflammatory video, there will be no "un ringing of the bell" and the damage will be done.

Importantly, there are evidentiary alternatives available to the government that tip the balance in favor of excluding this prejudicial evidence. The *Old Chief* Court set forth a methodology in balancing Rule 403 by explaining:

> The court would decide whether a particular item of evidence raised a danger of unfair prejudice. If it did, the judge would go on to evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well. *If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it* if its discounted probative value were substantially outweighed by unfairly prejudicial risk.

*Id.* at 182-183. (emphasis added). Here, the government has video surveillance of what Ms. Carpenter herself actually did. Its video of the defendant's own actions has far greater probative value than video of other people's actions – especially of others' actions she wasn't even present for – and presents no danger of unfair prejudice. Limiting the video evidence at this trial to Ms. Carpenter's actions will protect her right to a fair trial while avoiding the presentation of irrelevant evidence and the risk of confusing the jury.

### III. The Court Should Preclude Use of Inflammatory Labels

A federal district court has both the inherent authority and the duty to ensure that trials are conducted in a manner that protects a defendant's right to a fair trial. *See United States v. Marks*, 530 F.3d 799, 807 (9th Cir. 2008) ("District courts have broad power to ensure that a trial proceeds in a proper manner."). That authority includes preventing the use of language that casts the defendant, or others, in a negative light – particularly when it is irrelevant to the proceeding. *See* 20 Am. Jur. Trials 441 § 20 ("Expressions, names, nicknames, and the like, which are so sensitive that their use would be likely to stir up antagonistic feelings on the part of the jurors, ought to be removed from the case at the earliest opportunity. The damage they can inflict on a party's legal position may be irreversible even if they are used but once in front of the jury"). The authority also extends to ensuring that the jury is not confused by testimony or arguments that use terms that are misleading, ambiguous, or incomplete. *See United States v. DiVarco*, 484 F.2d 670, 675 (7th Cir. 1973) ("The district judge has a duty to see that the trial does not become confusing or repetitious.").

The government should not refer to Ms. Carpenter or any other individuals from that day as "rioters," "insurrectionists," "attackers," part of a "mob," or any other such inflammatory terms. These terms are highly prejudicial for several reasons. First, Ms. Carpenter hasn't been accused of overthrowing or attacking the U.S. government. Second, these terms only serve the purpose of invoking emotional responses from the jury which will lead them to judge Ms. Carpenter based on

inflammatory labels instead of her specific alleged conduct.

Third, such terms are inadmissible hearsay and conclusory. Any out-of-court "statement" offered in evidence to prove the truth of the matter asserted is hearsay. Fed. R. Evid. 801(c). There is no hearsay exception applicable to such terms. These terms reflect nothing more than the government's opinion, and the government cannot provide opinion testimony through lay witnesses or expert witnesses when the jury must determine the facts. *See United States v. Johnson*, 529 F.3d 493, 497-99 (2d Cir. 2008) (finding it impermissible for government witnesses to make "sweeping conclusions about the defendant's activities"); *See also United States v. Benitez-Avila*, 570 F.3d 364, 368-69 (1st Cir. 2009) (government not permitted to choose "a more seductive narrative structure for the presentation of the evidence of guilt" to convert prejudicial and otherwise inadmissible evidence into admissible evidence).

## Conclusion

For the foregoing reasons, the Court should preclude the government from introducing the above irrelevant and prejudicial evidence at Ms. Carpenter's trial.

Respectfully submitted,

By:    /s/ *Michelle A. Gelernt*
      Michelle A. Gelernt
      Deputy Attorney-in-Charge
      Federal Defenders of New York
      Brooklyn, NY 11201
      Telephone: (718) 330-1204
      Email: michelle_gelernt@fd.org

Kannan Sundaram
Assistant Federal Defender
Federal Defenders of New York
Brooklyn, NY 11201
Telephone: (718) 330-1203
Email: kannan_sundaram@fd.org