**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **CASE NO. 21-CR-305 (JEB)** |
| **v.** | **:** | |
| | **:** | |
| **SARA CARPENTER,** | **:** | |
| | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTIONS IN LIMINE TO PRECLUDE EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this response to Defendant Sara Carpenter's Motion in Limine to preclude the United States from using certain language (Def. Motion, ECF No. 59) and to preclude the United States from introducing a 22-minute compilation video as well as general evidence of the events of January 6, 2021, and also to preclude the United States from introducing any other statements of the Defendant that have not yet been identified. Defendant asks this Court to preclude the government from using terms such as "rioters," "attackers," "insurrectionists," "mob," or other similar terms, to describe the events of January 6, 2021, pursuant to Federal Rules of Evidence 401-403. In essence, Defendant Carpenter asks that the Court prevent the United States from using evidence and language that accurately establishes and describes the Defendant's crimes. The material the Defendant seeks to exclude is relevant to the charged conduct and fairly describes the riot, rioters, and Defendant's conduct; moreover, as described in detail below, the United States continues to investigate the events of January 6, 2021, including the conduct of the Defendant. Accordingly, the Court should deny the Defendant's motion.

## FACTUAL BACKGROUND

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking

windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

### *Defendant Carpenter's Conduct on January 6, 2021*

On January 6, 2021, the defendant, who had traveled from her home in New York, attended former President Trump's "Stop the Steal" rally at the Ellipse in Washington, D.C. There, she heard former President Trump tell others to go to the Capitol. Carpenter went to the Capitol, carrying a tambourine, and approached the building from the West side, where she saw police officers trying to prevent rioters from entering the building. Carpenter made her way through the crowd, and past police officers to the Upper West Terrace doors and entered the building at approximately 2:40 p.m.

Once inside the building, Carpenter eventually made her way into the Senate Rotunda, and then to the Old Senate Chamber, where she confronted D.C. Metropolitan Police officers. At the Old Senate Chamber, Carpenter can be seen on multiple videos, including body-worn camera, shouting profanities at the Metropolitan Police, trying to negotiate her intrusion further into the Capitol building where lawmakers and others were hiding in secure locations away from the rioters. Carpenter can be seen on camera slapping the hands away of law enforcement officers who were trying to hold her back from further intruding into the Capitol. Despite being told to

leave, and despite enduring the effects of chemical irritants and other methods that police used to try to keep Carpenter and other rioters at bay, Carpenter remained in the hallway at the Old Senate Chamber for several minutes.

Carpenter can be heard yelling, among other things, "This is my house!" in multiple videos. Carpenter was eventually forced out of the Capitol, through the east Rotunda Doors at approximately 3:18 p.m., having spent nearly forty minutes inside. Carpenter remained on Capitol grounds for a period of time after leaving the Capitol, and was recorded in another third-party video saying: "The breach was made. It needs to calm down now. Congress needs to come out. They need to certify Trump as President. This is our house."

## PROCEDURAL BACKGROUND

For this conduct, the defendant has been charged, via superseding indictment that was filed on June 16, 2021, with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), and 2; Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), and 2; Entering and Remaining in a Restricted Building and Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); Impeding Passage Through the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(E); Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

This case is set for trial, which has been scheduled for March 6, 2021. Defendant now seeks to preclude the government and any government exhibits or witnesses from referring to Defendant and her actions on January 6 at trial as "rioters," "attackers," "insurrectionists," "mob," or other similar terms, asserting such terms are irrelevant under Rule 401 and inflammatory,

resulting in unfair prejudice under Rule 403.  (*See* Def. Motion at 4-7.)  Defendant also seeks to exclude pretrial a compilation video, which has been used in other January 6 cases, but has not been identified yet as an exhibit that the United States will seek to introduce in this case.  (As explained in further detail below, the United States is currently preparing for trial and is organizing/determining what exhibits it will introduce).  Nonetheless, the Defendant's argument asserts that such a compilation video, which depicts the general evidence of the events of the Capitol that day, is unfairly prejudicial and would mislead and confuse the jury.  (See, Def. Motion at 6). The Defendant further seeks to preclude additional evidence, including statements from the Defendant that have not yet been identified.  Each of the Defendant's arguments lack merit, and requests to preclude this evidence should be denied.

## ARGUMENT

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, No. 18-cr-198, 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022). Additionally, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998). Neither Rule 401 nor 403 supports the defendant's requested relief.

I.   **General Evidence of the Events of January 6 and the Actions of Other Rioters at the Capitol, Which is Included in the Government's Compilation Video, is Relevant**

Defendant Carpenter argues that the Court should exclude a 22-minute video montage "capturing surveillance of thousands of other individuals on the Capitol Grounds and inside the

Capitol building on January 6, 2021." The video depicts general evidence of the events of January 6, 2021, including the conduct of other rioters, and the Defendant asserts that this video "depict[s] violence and activities that Ms. Carpenter was not involved in" and that such conduct is unrelated to the direct and specific alleged conduct of Defendant Carpenter (ECF 29 at 2-3.)

To convict her, the jury must find that Defendant Carpenter committed each offense with which she is specifically charged. It is not enough for the United States to show that Defendant Carpenter was simply present near others who committed crimes across the Capitol building and grounds. Defendant Carpenter's argument ignores the nature of these crimes as a collective action. It was the mob's collective action that disrupted Congress, and Defendant Carpenter's knowledge of the collective riot bears on her *mens rea* for each of the charged offenses.

The government does not anticipate focusing its evidentiary presentation on areas of the Capitol Defendant Carpenter did not go. However, to show the overall riot, its effects, the full context of Defendant Carpenter's actions, and why the certification of the Electoral College vote was suspended, the government will need present evidence to show the actions of other rioters in other areas of the Capitol building and grounds. None of the rioters were authorized to enter the Capitol. Law enforcement officer witnesses will explain that, in expelling rioters, they could not distinguish between those rioters who were overtly violent and those who were not; everyone had to leave. This is because law enforcement could not predict who would act violently; any member of the crowd might be a threat to them. Indeed, throughout the day, individual officers found their attention divided by the need to monitor the whole crowd, rather than focusing on a specific individual. But for Defendant Carpenter's actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Mazzocco*, No. 21-cr-54, Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were

6

committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). While a jury will judge Defendant Carpenter based on her own actions, the context of her actions will necessarily be placed before them—that context was a riot.

The actions of other rioters at multiple areas of the Capitol could be relevant to elements of the crimes with which Carpenter is charged. First, to prove Count One, Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), the government must establish that Defendant Carpenter committed or attempted to commit an act that obstructed, impeded, or interfered with law enforcement in the performance of their duties during a civil disorder, and the civil disorder obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. Evidence of actions of other rioters at all locations of the Capitol building and grounds is relevant to prove that a civil disorder was occurring and that it interfered with a federally protected function.

Additionally, to prove Count Two, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2, the government must establish that there was an "official proceeding" and the fact that it was disrupted. The official proceeding was the certification of the Electoral College vote, and, as with other Counts, proving this charge requires presenting evidence involving the actions of other rioters at all locations of the Capitol building and grounds. Moreover, Counts One and Two includes the alternative theory of aiding and abetting, pursuant to 18 U.S.C. § 2. Therefore, the conduct of other rioters is extremely relevant.

Furthermore, the government's use of any potential summary witnesses or evidence to this effect would permissibly "help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the

7

trial." *See United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983). Any such aspects of the government's case would need to be "accurate and nonprejudicial[,]" *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014), and require "a sufficient foundation[,]" *United States v. Mitchell*, 816 F.3d 865, 877 (D.C. Cir. 2016). Defendant Carpenter cannot substantiate her contention that the United States should be precluded from presenting this information.

Even if this Court found the actions of other rioters were prejudicial, a limiting instruction would be the appropriate remedy. The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice. *See, e.g.*, *United States v. Douglas,* 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis).

Because the actions of other rioters are relevant and not unduly prejudicial and because any prejudice can be addressed through an appropriate limiting instruction, the compilation video, which depicts the full context of the riot, is admissible evidence.

## II.     The Descriptors Accurately Describe the Events of January 6, and the Federal Rules of Evidence Do Not Preclude Them

Defendant Carpenter argues that the Court should bar terms like "insurrection," "attackers," "rioters," and "mob," and other language the Defendant argues is inflammatory. Defendant Carpenter argues that such terms are unfairly prejudicial because "these terms only serve the purpose of invoking emotional responses from the jury."  (*See* ECF 59 at 8-9.) Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (quoting Fed. R. Evid. 403, advisory committee's note).

By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges arouse emotion—and there is nothing improper about that. Indeed, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so." *Berger*, 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (*quoting United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the government should not be required to dilute its language and step gingerly around Defendant Carpenter's crimes. Contrary to her insinuations, what took place on January 6, 2021, was, in fact, a riot involving rioters, and an attack on the United States Capitol, the government of the United States, and American democracy. These characterizations are not hearsay.  After carefully considering the facts of other January 6 cases, many members of this District, including this Court, have recognized the riot as just such an attack. *See*, *e.g.*, *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v.*

*Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33–34, January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. So, too, will prosecutors need to use appropriate language—and not euphemisms—to describe the nature and gravity of Defendant Carpenter's conduct.

**III.  The Government Has Provided the Defendant with Evidence it Plans to Introduce at Trial, but New Material May be Discovered**

The Defendant's third request is to preclude the United States from introducing any alleged statements of Carpenter or additional evidence it has not previously disclosed.  The investigation into the January 6, 2021 riot at the U.S. Capitol is perhaps the largest investigation in U.S. history, involving thousands of subjects.  In addition to the case-specific discovery that has been provided to the Defendant, as of January 18, 2023, over 4.88 million files (over 7.2 terabytes of information) have been provided to the defense Relativity workspace.  These files include (but are not limited to) the results of searches of 749 digital devices and 408 Stored Communications Act accounts; 4,386 FBI FD-302s and related attachments; 347 digital recordings of subject interviews; and 129,021(redacted or anonymous) tips.  Over 30,000 files that include body-worn and hand-held camera footage from five law enforcement agencies and

surveillance-camera footage from three law enforcement agencies have been shared to the defense evidence.com video repositories.  For context, the files provided amount to over nine terabytes of information and would take at least 361 days to view continuously.

In short, there is an extraordinarily large amount of discovery in January 6 cases, and the United States continues to review and process this evidence.  It is not uncommon for the United States to find additional evidence, to include additional statements made by January 6 Defendants, when preparing for trial.  In addition, defendants in January 6th-related cases continue to be charged weekly, and evidence continues to be added to the global discovery database as those investigations continue. Due to the volume of the evidence available in these cases, the additions thereto, and the need to triage cases that are going to be litigated, there is a possibility, perhaps even a likelihood, that the United States will discover additional evidence when preparing for trial.  Regardless, this is not a case where discovery of evidence has been delayed, and we are still more than a month away from the date of trial, currently scheduled for March 6, 2021.  If the United States discovers additional evidence, it will promptly notify the defense within a sufficient time period before trial, so that the Defendant may make whatever adjustments are necessary for her own trial preparation and avoid any alleged prejudicial effects. *See, e.g., United States v. Hartley*, 678 F.2d 961 (11th Cir.1982); *United States v. Crouthers*, 669 F.2d 635, 640-41 (10th Cir. 1982); *United States v. Gillings*, 568 F.2d 1307, 1310 (9th Cir; *United States v. Euceda-Hernandez*, 768 F.2d 1307 (11th Cir. 1985).

There remains ample time for both the defense and the United States to prepare for trial in this case.  Accordingly, the Defendant's request to preclude the United States from continuing to investigate this case and from introducing any additional evidence it has not yet identified must be denied.

## CONCLUSION

To accurately present the context of what took place at the Capitol on January 6, 2021, to wit: a riot, a breach, an assault and an insurrection, the government is required to so refer and Defendant's motion to preclude such language should be denied.  Because the aforementioned Compilation video depicts general evidence of the riot, and because the full context of the riot and the Defendant's conduct within that riot is relevant to the Defendant's *mens rea* and *actus reus* and is not unfairly prejudicial, the government requests the Court deny Defendant's motion to exclude such evidence.  Finally, because there remains ample time for the parties to prepare for trial, the Defendant's request to preclude the United States from continuing to investigate this case and to preclude it from introducing any additional evidence must be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Christopher M. Cook*
CHRISTOPHER M. COOK
Assistant United States Attorney-Detailee
Bar No. KS 23860
601 D Street, N.W.
Washington, D.C. 20001
(412)327-3487
Christopher.cook5@usdoj.gov

*/s/ Rebekah E. Lederer*
REBEKAH E. LEDERER
Assistant United States Attorney
Bar No. PA 320922
601 D Street, N.W.
Washington, D.C. 20001
(202) 252-7012
Rebekah.Lederer@usdoj.gov