UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 21-cr-305 (JEB) |
| ) | |
| SARA CARPENTER, ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO LIMIT CROSS-EXAMINATION OF U.S. SECRET SERVICE WITNESS**

## Introduction

Ms. Carpenter, through counsel, writes in response to the government's motion *in limine* to limit the cross-examination of witnesses from the United States Secret Service (ECF No. 53). The government avers that "[t]o meet its burden of proof at trial, the government may call a witness from the United States Secret Service to testify that at the time of the Capitol Breach, Secret Service agents were on duty to protect Vice President Mike Pence and his two immediate family members, all of whom were present at the Capitol. If called, these officials will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members." *Id.* At 1-2.

The government states that it intends to offer the above testimony to prove Counts One (Civil Disorder, 18 U.S.C. § 231(a)(3)), Three (Entering and Remaining in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2)), and Four (Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 40 U.S.C. §

1

5104(e)(2)(D)). *See* ECF No. 53 at 4; ECF No. 35 (Indictment).

While seeking to introduce Secret Service agents' testimony about their assigned responsibilities that day and the Capitol breach's effect on their protection of Vice President Pence and his family, the government at the same time argues that the defendant "should be specifically foreclosed from questioning the witnesses about the following:

1. Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur;
2. Details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees."

*Id.* at 2.

For the reasons set forth below – indeed, for the reasons the government itself cites for precluding the above defense line of questioning, that it's not relevant to the issues at trial -- the government should not be permitted to introduce any of its intended testimony from Secret Service agents beyond that they were on duty to protect the Vice President and his immediate family members. If the Secret Service agents' testimony is limited as proposed here, then the defense will not seek to delve into their protocols or the nature of their protective details. But if the agents will be permitted to testify about the Capitol breach's effect on their protection of the Vice President, then the defendant should not be foreclosed from inquiring about those topics, at least not in advance of trial and not based on the paltry showing the

government makes in its *in limine* motion.

## **Argument**

As the government correctly states, "[t]o prove Counts Three and Four which charge violations of § 1752(a)(1) and (2), the government must prove that the Capitol and its grounds were 'restricted' because the Vice president and his family were present there and being protected by the Secret Service. *See* 18 U.S.C. § 1752(c)(1)(B) (defining restricted buildings and grounds)." ECF No. 53 at 4.

From this, the government argues that the matters on which it seeks to preclude cross-examination – the Secret Service's general protocols about relocation for safety" and the nature of its protective details – are not relevant to those counts because they do not "alter the probability that the Capitol and its grounds were restricted at the time." *Id.* At 4-5. But by the same token, neither does the Capitol breach's effect on the Secret Services. And the government does not seem to contend that the Secret Service's testimony about that has any relevance to Counts Three or Four. The issue with respect to the § 1752(a) counts is whether the Vice President and his immediate family members were "other person[s] protected by the Secret Service" as required for the Capitol Building to qualify as a "restricted building or grounds" for purposes of that provision. Thus, even based on the government's analysis, the only conceivably relevant testimony from Secret Services on that score is that they were on duty on January 6 to protect the Vice President and his two immediate family members.

The only point of contention raised in the government's motion, then, is the relevance and contours of Secret Service testimony with respect to Count One, charging Civil Disorder pursuant to 18 U.S.C. § 231(a)(3). Here, the government contends that their testimony is relevant to prove that the charged civil disorder "interfered with a federally protected function," ECF No. 53 at 4, or, in the language of the statute, "obstructed, delayed, and adversely affected [] the conduct and performance of any federally protected function" [18 U.S.C. § 231(a)(3)], which in turn is defined as any lawful function, operation, or action by a federal agency or officer. ECF No. 53, citing 18 U.S.C. § 232(3).

To meet this element, the government intends to offer testimony that Secret Service agents were at the Capitol to protect Vice President Pence and two immediate family members and "to explain how the events at the Capitol on that date affected the Secret Services' ability to protect" them. *Id*. Thus, in its motion the government indicates, for the first time, that the "federally protected function" the charged civil disorder obstructed, delayed or adversely affected was the Secret Service's function in protecting the Vice President.

Throughout these proceedings and up until the filing of the government's motion, however, the defense has understood that the federally protected function underlying this count was the certification of the election. This is not only because, as this Court has observed, "common knowledge regarding the events of January 6 suggests" that [*see United States v. Mostofsky,* 2021 WL 3168501, \*4 (D.D.C., July 27, 2021), 21-CR-138 (JEB), but also because the government's prior filings do, as

well. Most notably, the government's "Statement of Facts," filed at the outset of the case, states that the breach of the Capitol occurred at around 2:00 p.m. while the certification proceedings were still underway and that shortly thereafter the members of the joint session, including Vice President Pence in his role presiding over the proceedings, evacuated the chambers and the joint session was suspended. *See* ECF. No. 1, Complaint and attached Statement of Facts. The Secret Service, notably, is nowhere mentioned in that recitation of the events giving rise to these charges.

Ms. Carpenter, like Mr. Mostofsky, "should not be forced to guess which 'federally protected function' supports the count[.]" *See Mostofsky*, *supra*. Accordingly, before permitting the government to proceed on what appears to be a newly minted theory, the Court should, as it did in that case, require the government to "reveal what 'federally protected function' was 'obstructed, delayed, and adversely affected.'" *Id*.

If the Secret Service's assigned protection of the Vice President were to be deemed the "federally protected function" at the core of Count One – and the alleged interference with that function thus an element of that offense -- then the defendant has an unquestionable right to cross-examine on that issue. *United States v. Stamp*, 458 F.2d 79, 772 (D.C. Cir. 1971) (it is "without question that appellants had a right to cross-examine the [government witnesses] concerning … [criminal] transactions listed in the indictment[.]"). In this regard, the government, while arguing that evidence about the Secret Service's protocols about relocation for safety and the

nature of its protective details is not relevant to Counts Three and Four – a point the defense concedes – it makes no argument that such evidence is not relevant to Count One. Nor is any such argument apparent: If Secret Service agents are going to testify as to how their ability to protect the Vice President was affected by the events at the Capitol on January 6th, then their protocols about relocation for safety, and the number or types of assigned agents and other information about their protective details seem eminently relevant to that question.

In any event, the defendant is not in a position to gauge what questions it would ask on cross-examination given the meager information the government has set forth. The only thing the government has offered in this regard is a general statement that a "Secret Service official is further expected to explain how the events at the Capitol on that date affected the Secret Service's ability to protect Vice President Pence and his family." ECF No. 53 at 4. A fuller offer of proof is required before the defense can be expected to assess, or the Court to rule on, what line of cross-examination would be permissible.

Astoundingly, without even claiming or arguing that the questioning it seeks to preclude is not relevant to Count One, the government asserts that any "such relevance is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste time." *Id.* At 5. In support of this assertion, the government offers nothing, simply parroting the language of Rule 403 and citing a 2005 decision from the Southern District of California for the proposition that "information having broader national security concerns can be excluded under Rule

403 because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial can result in undue prejudice that substantially outweighs any probative value." *Id.*, citing *United States v. Mohammed*, 410 F.Supp. 2d 913, 918 (S.D. Cal. 2005).

In *Mohammed* the court held that the defendant was not entitled to discover classified materials or use them on cross-examination. Applying the requirements of the Classified Information Procedures Act ("CIPA"), the court conducted an *in camera* review of the classified material. *See id.* At 915.  After reviewing the materials, the court found that they were not relevant, that any probative value was substantially outweighed by the undue prejudice, delay, and confusion and distraction from the issues, and that national security concerns substantially outweighed the defendant's need for the documents. *See id.* at 916-18. The court made these findings based upon "a thorough review of the documents and consideration of Defendants' need for the materials and confrontation rights[.]" *Id.*

In contrast to the extensive disclosure and showing the government made and the court relied on in that case – which, unlike this one, involved classified material – the sum total of the government's "showing" here is the stock assertion that "the very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive branch and, by extension, national security." ECF No. 53 at 2.

The government has provided no claim or argument that the questioning it

seeks to preclude is not relevant and no basis for the Court to rule that its probative value is outweighed by its potential for prejudice or that it should be barred by concerns relating to national security. On this record, at least, its motion to preclude should be denied, or at least deferred until trial.

The government also requests that if the Court orders a hearing to determine the admissibility of Secret Service testimony, it conduct the hearing *in camera* and *ex parte*. *Id.* at 5. That request should be denied.

*Ex Parte* proceedings may occur only in "the most extraordinary circumstances." *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986). Such circumstances almost always involve classified information." *Id.* at 1060. Outside that context, the "extraordinary circumstances" that would permit an *ex parte* hearing are strictly limited. They include instances where (1) "documents sought by a party enjoy a privilege against discovery"; (2) "to prevent frustration of a statutory purpose to limit access to Government papers"; or (3) "to resolve fears of intimidation of a witness." *Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.2d 958, 967 (D.C. Cir. 2016). Apparently, the sole situation in which the D.C. Circuit has found those exceptions satisfied was "intelligence materials generated in the midst of a geopolitical conflict." *Id.* at 968.[1]

The government points to no evidentiary privilege, conflicting statutory purpose, or witness intimidation concern. The government cites no authority, and

---

[1] The government's remaining citations show, uncontroversially, that the Court may hold such a proceeding *in camera,* not *ex parte. See United States v. Nixon*, 418 U.S. 683, 714 (1974); *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977).

none exists, permitting any *in camera* hearing on this issue to be held *ex parte*. Such a procedure would violate due process. *Cf. Gilmore*, 843 F.2d at 967 (finding no due process violation because the materials reviewed *ex parte* were "intelligence materials generated in the midst of a geopolitical conflict."). Accordingly, even if the Court were to decide that an *in camera* hearing is necessary, it should not be held *ex parte*.

        Respectfully submitted,

By: /s/ *Michelle A. Gelernt*
Michelle A. Gelernt
Deputy Attorney-in-Charge
Federal Defenders of New York
Brooklyn, NY 11201
Telephone: (718) 330-1204
Email: michelle_gelernt@fd.org

Kannan Sundaram
Assistant Federal Defender
Federal Defenders of New York
Brooklyn, NY 11201
Telephone: (718) 330-1203
Email: kannan_sundaram@fd.org