UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.  ) | No. 21-cr-305 (JEB) |
| ) | |
| SARA CARPENTER, ) | |
| ) | |
| Defendant ) | |
| _____) | |

## DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO PRECLUDE ENTRAPMENT BY ESTOPPEL DEFENSE

Ms. Carpenter, through counsel, writes in response to the government's premature request that the Court exclude her from presenting an affirmative defense at trial. For the reasons set forth below, the government's request should be denied and Ms. Carpenter should be able to present to the defenses of public authority and entrapment by estoppel.

## LEGAL STANDARD

It is a bedrock principle that a criminal defendant has a constitutional right to present a defense. *See Chambers v. Mississippi*, 410 U.S. 284 (1973). The right to present a defense is in plain terms "the right to present the defendant's version of the facts as well as the prosecution's version to the jury so that it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14 (1967). A defendant is generally entitled to an instruction on her theory of the case and:

> [W]here there is evidentiary support for special facts sustaining a rational defensive theory, to which the court's attention is specifically

1

> directed, the defendant is entitled to have the jury charged on that theory; however weak the evidence, however implausible the theory may appear to be, the matter is for the jury's determination.

*Brooke v. U.S.*, 385 F.2d 279, 284 (D.C. Cir. 1967). In determining whether there is a basis for the instruction, the evidence must be reviewed in the light most favorable to the defendant. *United States v. Alvarado*, 808 F.3d 474, 488 (11th Cir. 2015).

A defendant is entitled to a jury instruction on any recognized affirmative defense "if there is sufficient evidence from which a reasonable jury could find for the defendant on that theory." *United States v. Nwoye*, 663 F.3d 460, 462 (D.C. Cir. 2011). Federal Rules of Criminal Procedure 12.3 allows for an affirmative defense called the "public authority" defense, which requires a defendant to provide advance notice if the defendant intends to assert a defense of actual or believed exercise of public authority at a trial. The public authority defense is available if an individual (1) reasonably, on the basis of an objective standard, (2) relies on a (3) conclusion or statement of law (4) issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant legal field. *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976).

The first three issues are issues of fact for the jury with the fourth being a question of law. *Id.* The Court in *Barker* noted:

> It would appear to serve both justice and public policy in a situation where an individual acted at the behest of a government official to allow the individual a defense based upon his reliance on the official's authority if he can show that his reliance was objectively reasonable under the particular circumstances of his case.

*Id.* at 949. The public authority defense is available when the defendant has shown that his "reliance on governmental authority was reasonable as well as sincere." *United States v. Burrows*, 36 F.3d 875, 882 (9th Cir. 1994).

The entrapment by estoppel defense is another form of the public authority defense in that it is available when a government official commits an error and the defendant relies on it and thereby violates the law. *Id.* "In short, the defense involves the 'concept of unintentional entrapment by an official who mistakenly misleads a person into a violation of the law.' *Id.* (quoting *United States v. Tallmadge*, 829 F.2d 767, 773 (9th Cir. 1987)). To win an entrapment by estoppel claim, a defendant criminally prosecuted for an offense must prove: (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018). *See also Raley v. State of Ohio*, 360 U.S. 423, 437 (1959) (conviction overturned because upholding conviction would violate due process and constitute entrapment).

## INTRODUCTION

Never before in our nation's history has a sitting United States President, alongside other prominent elected officials, invited, encouraged, and condoned the public to engage in criminal conduct. After choosing to charge over 800 individuals with vast ranging alleged criminal conduct arising from the events on January 6, 2021, the federal government now opposes Ms. Carpenter's right to present a viable defense. The government does this even after being aware of the findings of the January 6 House Committee that President Trump was responsible for inciting the events on January 6, 2021.[1] In support of its position, and as discussed further below, the government relies on case law that is not binding on this Court, and its efforts to undermine Ms. Carpenter's constitutional right to present her own defense should be rejected.

## ARGUMENT

### I. The President of the United States and Commander in Chief Has Clear Authority to Permit Ms. Carpenter's Alleged Conduct

The government in its opposition wrongfully and without authority asserts that the President of the United States at the time did not have the authority to authorize Carpenter's alleged conduct. *See* ECF No. 56 at 2. First, the government is asking the Court to ignore the vast power that the President of the United States clearly has. Under the United States Constitution, the President is the nation's

---

[1] Jonathan Allen, *On Jan. 6, Trump ignored all pleas to call off the mob attacking the Capitol while 'pouring gasoline on fire' aide says*, NBC News, July 21, 2022, available at https://www.nbcnews.com/politics/congress/prime-time-jan-6-hearing-focuses-trumps-inaction-187-minutes-mayhem-rcna36737

4

leader and chief executive of the executive branch. With this position comes the power to make laws, veto laws, and enforce the laws made. The President can also issue executive orders that don't require the approval of Congress. The President is the Commander in Chief of the Army and Navy of the United States, and of the Militia of the several States. U.S. Const., Article II, Section 2. The government's claim that the President does not, at a minimum, have the authority to permit its citizens to enter into a government building is unsupported and farfetchecd.

. The President of the United States would certainly have the authority, at a minimum, to authorize an individual to demonstrate on Capitol Grounds and could authorize access to the Capitol building. The government cites no rule of law that would prohibit such authorization by a President.

The authority the government chiefly relies upon to suggest that the President was not authorized to permit these actions is an opinion by Chief Judge Howell based solely on a discussion surrounding the Bail Reform Act. *See* ECF No. 56 at 1-3 (citing to *United States v. Chrestman*, 525 F. Supp 3d 14 (D.D.C. 2021)). In deciding to detain a January 6 defendant, the Court made a passing statement regarding whether or not the public authority defense would be viable. In its opinion, the Court did not think it would be viable and so concluded that the weight of the evidence factor in determining bail was still strong. *Id*. This was a decision about bail, not a decision regarding whether or not the defendant could present the public authority defense. The opinion should not be considered precedent on this issue. The Court in *Chrestman* was not presented with the issue here and the

opinion did not suggest that defendants could not even present the defense at trial.

Furthermore, the language from the *Chrestman* opinion also ignores the broad coverage of 18 U.S.C. §1512's prohibitions which includes even "*influencing an official proceeding.*" In *Chrestman*, the Court explained that President Trump did not have the authority under the Constitution to "direct an assault" on the Legislative branch of government. *Id*. at 32-33. However, that is not the question here but rather it is whether the President had the authority to authorize entry into the Capitol building for the purpose of influencing the vote. The government presents no argument as to whether or not the President can permit entry on otherwise restricted grounds for the purpose of demonstrating inside a Capitol building while the certification of the vote is occurring. Ms. Carpenter is not charged with destroying property or assaultive behavior – but rather more specifically trespassing and influencing the certification vote.

The Former President Trump, after several minutes of reiterating his claims that the election was stolen, said the following to the crowd (including Ms. Carpenter) on January 6, 2021:

> We will not let them silence your voices. We're not going to let it happen, I'm not going to let it happen…..We're gathered together in the heart of our nation's capital for one very, very basic and simple reason – to save our democracy….Now, it is up to Congress to confront this egregious assault on our democracy. And after this, ***we're going to walk down, and I'll be there with you***, we're going to walk down…I know that everyone here will soon be marching over to the *Capitol building* to peacefully and patriotically make your voices heard….And they want to recertify their votes…**But the only way that can happen is if Mike Pence agrees to send it back…If not…you will have an illegitimate President.** That's what you'll have. And we can't let that happen…**We must stop the steal** and

then we must ensure that such outrageous election fraud never happens again….**And we fight. We fight like hell**. **And if you don't fight like hell, you're not going to have a country anymore…..So we're going to, we're going to walk down Pennsylvania Avenue…And we're going to the Capitol, and we're going to try and give them the kind of pride and boldness that they need to take back our country.. So let's walk down Pennsylvania Ave**.[2]

The crowd, including Ms. Carpenter, had no reason to believe that the President had not authorized them to be able to walk freely at the Capitol to confront Congress and influence them not to certify the vote. The President never once warned the crowd not to actually enter the building and even indicated he was going to join them.

In *Barker*, the Court reasoned that the public authority defense does not encourage ignorance of the law, "for the defense requires that the individual either seek or be cognizant of the official statement upon which he or she relies," and that "the defense advances the policy of fostering obedience to the decisions of certain individuals that society has put in positions of prominence…i.e., courts, executive officials.." *Barker*, 546 F.2d at 955-956. The Court applied the required factors and reasoning to conclude that the defendants relied on Hunt's authority as delegated from an intelligence superstructure controlled by the White House, and firmly believed that they were acting in a legal capacity. *Id*. at 957.

The Court further reasoned that "the Executive Branch of the United States

---

[2] Associated Press, *Transcript of Trump's Speech at Rally Before US Capitol Riot*, U.S. News & World Report, Jan. 13, 2021, available at https://www.usnews.com/news/politics/articles/2021-01-13/transcript-of-trumps-speech-at-rally-before-us-capitol-riot (last viewed on Nov. 22, 2022).

7

Government is vested with substantive responsibilities in the field of national security, and decisions of its officials on the extent of their legal authority deserve some deference from the public." *Id*. Similarly, Ms. Carpenter relied on the highest ranking official in the Executive Branch, the President, who concluded that it was okay for them all to march down to the Capitol and continue making their voices heard to ultimately accomplish the goal of "Stop the Steal." There is no reason to believe that the President is not vested with such authority to declare once restricted grounds no longer restricted.

There is no reason at this juncture that Ms. Carpenter should be precluded from availing herself of the defense if she is able to establish certain required factors at trial. Notably, the only factor she must show now, as the first three are in the sole province of the jury, is the fourth *Barker* factor that the conclusion was "issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant legal field." *Barker*, 546 F.2d at 955. It is difficult to imagine how the President and Commander in Chief is not an official charged with the enforcement of the law.

The government further argues that reliance by Ms. Carpenter on law enforcement's authorization would not be reasonable "in light of the 'obvious police barricades, police lines, and police orders restricting entry at the Capitol'" ECF No. 56 at 10, quoting *Chrestman*, 525 F.Supp.3d at 32. However, the government is not the factfinder, those facts should await the presentation of evidence at trial, and that question is solely in the province of the jury. *See*

*Barker*, 546 F.2d at 955 (first three requirements of defense are issues of fact with fourth being an issue of law).

Evidence has not yet been presented showing such a belief was objectively unreasonable, and the government's attempt at foreshadowing such evidence should be rejected. A defendant is entitled to a jury instruction on "any recognized affirmative defense if there is sufficient evidence from which a reasonable jury could find for the defendant on that theory." *Nwoye*, 663 F.3d at 462. This evidence would be presented at trial and at the close of evidence, the Court would make a finding to determine if there is sufficient evidence. The government is prematurely asking the Court to preclude this defense without hearing the actual evidence at a trial. Its request should be rejected at this juncture. *See United States v. Boutte*, 2019 WL 4261745 *2 (D. New Mexico September 9, 2019) (denying government motion to exclude public authority defense as premature because the Court must hear evidence at trial).

## II.     At a Minimum, the President has the Apparent Authority to Permit Carpenter's Alleged Conduct

The government incorrectly asserts that for Ms. Carpenter to present the public authority defense, the President must have had actual authority rather than apparent authority. *See* ECF No. 56 at 2, 3. As an initial matter, the language in Fed. R. Crim. Proc. 12.3 allows for a defense of actual *or believed* exercise of public authority at a trial. So, the statute allowing for the defense does not itself place a limitation that the official must have *actual* authority. Furthermore, there is nothing in the Court's reasoning in *Barker* that would suggest this limitation, and

9

indeed, when applying the criteria to the facts in *Barker* the Court noted that "a jury may well find that John Ehrlichman, then Assistant to the President for Domestic Affairs, expressed or implied that the break-in….was legal under a national security rationale." *Barker*, 546 F.2d at 957.

That reasoning suggests that the jury need only find that it would be plausible to believe that Ehrlichman had the authority to authorize the break-in. The government's reliance on the district court's decision in *Chrestman* for this position is insufficient. The Court should follow *Barker*, a circuit court decision that sets forth the standard in a very detailed opinion.

Other circuits have also refused to place such a limitation on the public authority defense. *See United States v. Reyes-Vasquez*, 905 F.2d 1497, 1500 n. 5 (11th Cir. 1990) (a public authority defense applies when a defendant alleges that his actions were taken under color of public authority); *See also United States v. Xiong*, 914 F.3d 1154, 1160 (8th Cir. 2019) (discussing the fact that this distinction has not been settled in the district); *See also United States v. Baker*, 438 F.3d 749, 753-54 (7th Cir. 2006) (same) (but also acknowledging that Rule 12.3 itself allows for apparent authority).

The Ninth Circuit, meanwhile, has affirmatively adopted the view that apparent authority is all that is required as long as the "defendant reasonably believed that a government agent authorized [her] to engage in illegal acts." *United States v. Bear*, 439 F.3d 565, 568 (9th Cir. 2006). Not only has the Ninth Circuit adopted this standard but it has also ruled that it was plain error for a district court

to not give the public authority instruction *sua sponte* even when the defendant did not request it. *Id.* ("when a defendant actually presents and relies upon a theory of defense at trial, the judge must instruct on that theory even where such instruction was not requested").

### III. Entrapment by Estoppel is Just Another Form of the Public Authority Defense And Should Not Be Precluded

Even if the Court finds that actual authority is required and that former President Trump did not possess such authority – actual authority is not required when presenting the defense of Entrapment by Estoppel. *See Baker*, 438 F.3d at 755-57 (entrapment by estoppel requires "the defendant to show his reliance on the alleged misrepresentations was reasonable and in good faith" and must show [agent] was clothed with apparent authority); *See also ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988) (available claim or defense against a party who has detrimentally relied on litigant's conduct). Other circuits have simply called "entrapment by estoppel" the *second form* of the public authority defense requiring a showing that "the government, by its own actions, induced the defendant to do those acts and led him to rely on his belief that his actions would be lawful by reason of the government's seeming authorization." *See United States v. Thomas*, 214 F. Supp. 3d 187, 192 (E.D. New York October 7, 2016) (quoting *United States v. Giffen*, 473 F.3d 30, 41 (2d Cir. 2006). (emphasis added). *See also United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996) (noting that "public authority" is sometimes called "entrapment by estoppel.").

11

The Supreme Court established the important principles leading to the creation of this defense. For example, in *Raley v. Ohio*, 360 U.S. 423, 424-426 (1959), the Supreme Court held that the Due Process Clause prevented convictions of persons who relied upon either *express or implied* assurances from state authorities to act a certain way because upholding such a conviction "would be to sanction an indefensible sort of entrapment of the State." (emphasis added). The Supreme Court later applied *Raley* to reverse a conviction where the defendant was convicted for demonstrating near a courthouse after receiving authorization to do so from officials. *Cox v. State of La.*, 379 U.S. 559 (1965).

Ms. Carpenter may present this defense to the jury as long as she has shown "some foundation in proof" to assert it. *Thomas*, 214 F. Supp. 3d at 192 (finding the defendant could present the defense when defendant pointed to evidence that he was permitted to possess drugs as part of his duties as a government informant). Here, there is ample evidence that the President of the United States told her and thousands of others to march to the Capitol to stop the steal. This speech was documented and was public and cannot be disputed. This evidence is more than sufficient for Ms. Carpenter to be able to present this defense at trial.

The government's arguments regarding the defenses of public authority and entrapment by estoppel are based on misconstructions of those principles. The government also asks the Court to preclude the defendant from arguing that she acted legally based on the inaction by the Capitol Police that permitted protesters to enter. *See* ECF No. 56 at 7-9. The government itself acknowledges, however, that

such conduct by law enforcement officers may be relevant to the defendant's intent and state of mind when she entered the Capitol Building. *Id.* at 8-9. The government notes, however, that law enforcements' inaction or other conduct cannot be relevant to Ms. Carpenter's intent unless she observed or was otherwise aware of it. As is obvious from the argument on its face, any rulings in that regard should await the presentation of evidence. Accordingly, the government's motion to preclude such arguments *in limine* should be denied

## Conclusion

For the above reasons, the Court should reject the government's attempt to prevent Ms. Carpenter from presenting a viable defense that she is entitled to present at her trial.

Respectfully submitted,

By: /s/ *Michelle A. Gelernt*
Michelle A. Gelernt
Deputy Attorney-in-Charge
Federal Defenders of New York Brooklyn, NY 11201
Telephone: (718) 330-1204
Email: michelle_gelernt@fd.org

Kannan Sundaram
Assistant Federal Defender
Federal Defenders of New York
Brooklyn, NY 11201
Telephone: (718) 330-1203
Email: kannan_sundaram@fd.org