UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SARA CARPENTER,<br><br>Defendant. | Criminal Action No. 21-305 (JEB) |

### MEMORANDUM OPINION

Defendant Sara Carpenter faces charges for allegedly participating in the insurrection at the United States Capitol on January 6, 2021. Both she and the United States have filed a series of Motions *in Limine*, several of which remain outstanding. They concern character evidence, see ECF No. 55 (Character Evidence Motion); an entrapment-by-estoppel defense, see ECF No. 56 (Entrapment by Estoppel Motion); and various pieces of Government evidence. See ECF No. 59 (Defense MIL). The Court resolves those Motions together here.

I.      **Legal Standard**

"[M]otions *in limine* are a means for arguing why 'evidence should or should not, for evidentiary reasons, be introduced at trial.'" Graves v. District of Columbia, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (emphasis omitted) (quoting Williams v. Johnson, 747 F. Supp. 2d 10, 18 (D.D.C. 2010)). They "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" Id. at 10 (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990)). The court has "broad discretion in rendering evidentiary rulings, . . . which extends . . . to the threshold question of whether a motion *in limine* presents an evidentiary

1

issue that is appropriate for ruling in advance of trial." Barnes v. District of Columbia, 924 F. Supp. 2d 74, 79 (D.D.C. 2013).

Although state and federal rulemakers have the prerogative to fashion standards for the inclusion of evidence at trial, the Constitution guarantees to criminal defendants the right to a "meaningful opportunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). This limits courts' ability to impose "arbitrary" rules of evidence, including those that exclude "important defense evidence" without serving "any legitimate interests," or are otherwise "disproportionate to the purposes they are designed to serve." Id. at 324 (internal quotation marks omitted). At the same time, it falls within a court's discretion to exclude evidence whose probative value is outweighed by other negative factors, such as its potential to confuse or mislead the jury. Id. at 326; see also id. at 330 (noting that evidentiary rules seek to "focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues"). And a defendant is only entitled to a jury instruction on an affirmative defense "if there is sufficient evidence from which a reasonable jury could find for the defendant on that theory." United States v. Nwoye, 663 F.3d 460, 462 (D.C. Cir. 2011) (internal quotation marks omitted).

## II.     Analysis

### A.   Character Evidence

The United States moves *in limine* to exclude "evidence of specific instances of [Defendant's] prior good conduct, including that derived from her career in law enforcement." Char. Evid. Mot. at 1. The Court will grant the Motion.

Under Federal Rule of Evidence 405(b), a defendant may introduce specific instances of conduct to prove a particular character trait only where that trait "is an essential element of a

charge, claim, or defense." Here, however, Defendant's purported character traits of peacefulness or nonviolence are not elements of any charge or defense. In other words, the Government does not need to show that she has any particular character of aggressiveness or violence in order to prevail. Judge Amit Mehta recently so held, granting a Government motion *in limine* to prevent a decorated NYPD officer from introducing examples of peaceable conduct in a January 6th trial. See United States v. Webster, No. 21-208 (D.D.C.), ECF No. 75 (Order on MILs), ¶ 2. This Court will similarly prohibit Carpenter from introducing specific prior acts of peacefulness or nonviolence, including from her time as an NYPD officer.

The Government's Motion also mentions reputation or opinion testimony, which is governed by the related Rule 405(a). See Char. Evid. Mot. at 5. Where a defendant's character trait is "pertinent" to a charge or defense but not an essential element of one, that Rule provides that evidence of that trait "may be proved by testimony about the person's reputation or by testimony in the form of an opinion." The Government here appears to recognize that evidence of Defendant's general law-abidingness, including her peacefulness or nonviolence, might be pertinent to the charged offenses; it thus argues only that "the form of that evidence" would have to be constrained by Rule 405(a). See Char. Evid. Mot. at 5–6. The Court accordingly will allow Carpenter to introduce evidence as to her character for law-abidingness or peacefulness but only "by testimony about [her] reputation or by testimony in the form of an opinion" under Rule 405(a), not via evidence of prior acts. See Webster, No. 21-208, Order on MILs, ¶ 2 (Judge Mehta taking same approach) (citing United States v. Washington, 106 F.3d 983, 999–1000 (D.C. Cir. 1997); and United States v. Irving, No. 07-107, 2008 WL 163653, at *1 (D.D.C. Jan. 18, 2008)).

B. Entrapment-by-Estoppel Defense

The Government next moves to preclude Carpenter from raising as an affirmative defense entrapment by estoppel, also sometimes referred to as the "public authority" defense. See Entrap. Mot. In response, Defendant filed a notice informing the Court and the Government that she may wish to present such a defense, arguing that she believed that her actions on January 6 were authorized by President Trump and the Capitol Police. See ECF No. 60 (Def. Notice) at 1; ECF No. 68 (Def. Opp.) at 7–8, 12. The Court will preclude that defense as to the statements made by the former President but will allow it at this juncture as to the Capitol Police.

1. *President Trump*

As to statements made by former President Trump, the Court finds persuasive an opinion in this district written by Judge John Bates, which precluded a defendant from raising the public-authority defense based on the same statements as Carpenter wishes to rely on here. See United States v. Sheppard, No. 21-203, 2022 WL 17978837 (D.D.C. Dec. 28, 2022). In that opinion, Judge Bates undertook a thorough review of the D.C. Circuit's treatment of both the public-authority and entrapment-by-estoppel defenses to conclude that they are "available only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful." Id. In applying that principle to Trump's speech at his rally on January 6, Judge Bates found that:

> [t]hese words only encourage those at the rally to march to the Capitol — nothing more — and do not address legality at all. But, although his express words only mention walking down Pennsylvania Avenue to the Capitol, one might conclude that the context implies that he was urging protestors to do something more — perhaps to enter the Capitol building and stop the certification. But even if so, there is simply no indication that Trump informed the protestors that doing so would be legal, as required to make out either [the public-authority or entrapment-by-estoppel] defense. His speech simply suggests that it would be an act of "boldness" to "stop

4

> the steal." Thus, allowing [defendant's] reliance on these words would be an instance of allowing "following orders, without more, [to] transform an illegal act into a legal one" — something the D.C. Circuit has unequivocally declined to do.

Id. (citation and emphasis omitted).

Carpenter here makes virtually the same arguments as the defendant did in Sheppard. She contends that, after Trump's rally speech, she "had no reason to believe that the President had not authorized [the rallygoers] to be able to walk freely at the Capitol to confront Congress and influence them not to certify the vote" and that the "President never once warned the crowd not to actually enter the building and even indicated he was going to join them." Def. Opp. at 7. But it is not enough for Carpenter to show that she believed that the former President approved of their marching to and entering the Capitol; instead, she must offer evidence that he either expressly stated or strongly implied that to do so was lawful. See Sheppard, 2022 WL 17978837, at *9 n.6 (declining to decide whether assurance from public authority must be express or how clearly it must be implied because "former President Trump neither said nor implied that [defendant's] actions were legal").

Because the Court is persuaded that Trump's statements at the January 6 rally do not plainly state or imply that entering the Capitol or interfering with the electoral certification would be lawful, they cannot support an entrapment-by-estoppel or public-authority defense.

2. *Law Enforcement*

The Government also seeks to preclude the defense "from arguing that any failure to act by law enforcement" to prevent protesters from entering the Capitol "rendered [Carpenter's] conduct legal." Entrap. Mot. at 7; see Def. Opp. at 12–13. On this point, the Court agrees with Defendant that such a ruling would be premature and should await the presentation of evidence at trial. Considering what evidence is admitted, the Court will rule before closings and

5

instructions whether this defense is available. As a result, it cautions Defendant that if she relies on this argument in opening, she risks the possibility that the Court may not provide an entrapment-by-estoppel instruction to the jury in the event that she has not presented "sufficient evidence from which a reasonable jury could find for the defendant on that theory." Nwoye, 663 F.3d at 462.

  C. Defense Motion

Defendant, for her part, moves *in limine* to exclude three categories of evidence, which the Court will address in turn.

First, she asks the Court to preclude the introduction of a 22-minute montage of surveillance footage capturing what occurred on the Capitol Grounds and inside the Capitol building during the afternoon hours of January 6. See Def. MIL at 1, 4. She argues that because she is nowhere depicted, the video is entirely irrelevant to the charges against her. Id. at 4. For similar reasons, Carpenter also seeks to exclude other general visual evidence showing events from that day in which she did not take part. Id.

To begin, the Court recognizes that this part of her Motion may be premature, as the Government has yet to confirm whether it will even be using the 22-minute montage at trial. Id. at 4 (noting that defendant "anticipate[s]" use of the compilation). Assuming for purposes of this Opinion that it will, however, the Court at this point cannot find the video — along with other overview evidence — inadmissible.

As a general matter, the Government must be given leeway to place a defendant's actions into context and to assist the jury in "organiz[ing] and evaluat[ing] evidence which is factually complex and fragmentally revealed." United States v. Lemire, 720 F.2d 1327, 1348 (D.C. Cir. 1983). This category of evidence would permit the Government to do just that. Perhaps more

6

importantly, however, general evidence of the events of January 6 is probative of several elements of the crimes with which Carpenter is charged. See Fed. R. Evid. 401. Specifically, to prove that she violated 18 U.S.C. § 231(a)(3) (Count I), the Government must establish that she committed an act to "obstruct, impede, or interfere with" law enforcement in the performance of their duties "during the commission of a civil disorder which in any way or degree obstructs . . . or performance of any federally protected function." 18 U.S.C. § 231(a)(3) (emphasis added); ECF No. 63 (Gov't Opp.) at 7. The montage video and other similar evidence is plainly probative of whether (a) a civil disorder actually transpired, and (b) said disorder obstructed the performance of a federally protected function. Consider also Count II, which alleges that Carpenter "obstruct[ed] . . . any official proceeding, or attempt[ed] to do so." 18 U.S.C. § 1512(c)(2). To prove a violation of § 1512(c)(2), the Government must show that that there was an official proceeding, and that such proceeding was in fact disrupted. Id.; Gov't Opp. at 7. Here, too, general evidence of the events on January 6 would be highly relevant.

      In the context of the charges brought against Carpenter, the weighty probative value of evidence that broadly depicts what happened on January 6 outweighs any potential prejudice or cumulativeness. The Court at this point thus sees no reason to exclude it. To the extent that Defendant objects to specific images as being too prejudicial, she may raise her objections during trial, and the Court will address them at that time. See, e.g., Def. MIL at 6 (objecting to specific images and actions in video as unfairly prejudicial and confusing).

      Second, Carpenter moves to prevent the Government from using "inflammatory language" like "insurrection," "rioters," or "mob." Id. at 2, 8–9. She maintains that the terms are highly prejudicial and "only serve the purpose of invoking emotional responses from the jury." Id. at 8. That is incorrect. What occurred on January 6 was in fact a riot and an

insurrection, and it did in fact involve a mob. The terms to which Defendant objects are thus accurate descriptors, not attempts to provoke or agitate the jury. To be sure, Carpenter's concerns are not entirely without merit, so the Court will monitor the Government's use of language during trial to guard against potential prejudice from, say, excessive repetition. For now, though, the Court concludes that so long as the Government refrains from imputing guilt solely by association, there is no need for it to sanitize or "dilute" the language it uses to describe the events of January 6. See Gov't Opp. at 9.

Finally, Defendant asserts that the Government should be precluded from "introducing . . . alleged statements of Ms. Carpenter that it has not previously disclosed." Def. MIL at 1. The Government has provided the statements it currently has to the defense, and it has agreed to promptly notify Defendant of any additional ones it discovers between now and the trial. See Gov't Opp. at 11. The Court finds that to be a fair and acceptable protocol. Absent a showing of serious prejudice, there is no reason to lock the Government into relying only on the evidence of which it is currently aware. This part of the Motion will also be denied.

### III. Conclusion

The Court, accordingly, will grant the Government's Character Evidence Motion, grant in part and deny in part the Government's Entrapment-by-Estoppel Motion, and deny Defendant's Motion *in Limine*. A separate Order so stating will issue this day.

s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 9, 2023